## Case No. 17,220.

### The WASHINGTON.

[3 Blatchf. 276.] [1]

Circuit Court, S. D. New York.   May 22, 1855. [2]

COLLISION OF STEAMBOATS—INEXPERIENCED PILOT —PRESUMPTIONS.

1. The general rule of navigation is, that where two steamboats are approaching each other in opposite directions, it is the duty of each to port her helm, and pass on the right.

[Cited in The B. B. Saunders, 19 Fed. 122.]

2. Where the person who acted as pilot of a steamboat, was not a pilot by profession or occupation, and had never undertaken to pilot any other steamboat, and was engaged by her as a cooper, and not as a pilot, and a collision occurred between such steamboat and another steamboat: *Held*, that the presumption was against his discreet and proper management of his vessel, at and previously to the accident.

[Cited in The Milwaukee, Case No. 9,626.]

3. Owners of vessels are not only bound to have a full complement of men and officers on board, and responsible for their faithful discharge of their duty, but they are also under obligations to have men of competent experience and skill to perform that duty intelligibly and understandingly, under all circumstances and in all emergencies.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court by the owners of the steamboat Peter Crary against the steamboat Washington, to recover damages for a collision which occurred in the North river opposite pier No. 6. After a decree in the district court in favor of the libellants [Case No. 17,223], the claimant appealed to this court.

Dennis McMahon, for libellants.

Washington Q. Morton and William J. Haskett, for claimant.

NELSON, Circuit Justice.   The Peter Crary had come out of the East river and was on her way up the North river to her berth at the foot of Harrison street. The Washington had left the dock at the foot of Jay street, and was passing down the river, on her course to the East river. The bows of the Washington struck the Peter Crary on her larboard side,

some six or seven feet abaft her stem, nearly head on, doing considerable damage.

The real controversy among the witnesses in the case is, as to which vessel, under the circumstances, was entitled to pass inside of the other, that is, next to the piers along the margin of the river. It was a calm, bright night, and there must have been gross negligence or mismanagement on one side or the other.

The Peter Crary starts with the benefit of the general rule of navigation in her favor in the controversy, namely, that where two steamboats are approaching each other in opposite directions, it is the duty of each to port her helm and pass on the right. The Peter Crary having pursued that course, the burden lies on the Washington to make out a state of circumstances that required the Peter Crary to depart from that rule, and go to the left.

This defence is attempted, and it is sought to be shown, that the Peter Crary, after having come around the Battery, bore off into the river, and continued on that course till within a short distance of the Washington, which was coming down near the docks, and then suddenly took a rank sheer across her track, making a collision inevitable. If this view could be maintained, the defence would be complete. But, unfortunately for the Washington, the weight of the evidence is the other way; namely, that the Peter Crary was coming up the river, if not inside of the course of the Washington, at least as near the range of the piers as she was. The collision took place nearly opposite pier No. 6, and, according to the testimony of Burnham, a man on the Telegraph, which lay at pier No. 4, the Peter Crary was within twenty feet of him when she passed there. He is a disinterested witness, and supports the evidence of Brasier on the Peter Crary, who came up from below just before the accident, and who says that the Washington was then west of and heading in towards them, when a length or a length and a half off.

The truth of the case is, as is apparent from the proofs, that the collision was occasioned by the incompetency of Decker, the pilot of the Washington. He was totally unfit to have the charge or management of a vessel, in the difficult navigation of this harbor, among the crowd of vessels thronging both rivers. He was not a pilot by profession or occupation, and admits that he never undertook to pilot a steamboat except on board of the Washington; and he was there engaged as a cooper, and not as pilot. Being thus inexperienced and unskilled, the presumptions are all against the discreet and proper management of his vessel before and at the time of the accident. Owners of vessels are not only bound to have a full complement of men and officers on board, and responsible for their faithful discharge of their duty, but they are also under obligations to have men of competent experience and skill to perform that duty intelligibly and understandingly, under all circumstances, and in all emergencies. And they will find their own interest, as well as that of the public, promoted by a rigorous ex-

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]
[2] [Affirming Case No. 17,223.]

action of this measure of responsibility. Any additional sum paid as a compensation for the services of competent and skilful men, will be more than refunded by indemnity against loss and damage occasioned by the errors and mistakes of the incompetent.

I am satisfied that the decree of the court below is right, and should be affirmed.